UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UMPQUA BANK, an Oregon chartered bank, | NO. CIV. 2:09-3208 WBS EFB |
| Plaintiff, | <u>MEMORANDUM AND ORDER RE:</u> <u>MOTION FOR SUMMARY JUDGMENT</u> |
| v. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, | |
| Defendant. | |

----oo0oo----

Plaintiff Umpqua Bank ("Umpqua") brought this action against defendant First American Title Insurance Company ("First American") arising out of defendant's allegedly wrongful denial of title insurance coverage for plaintiff's claim. Presently before the court is defendant's motion for summary judgment pursuant to Rule 56.

///
///

1

I.   <u>Factual and Procedural Background</u>

Plaintiff alleges that defendant breached two title insurance policies issued to plaintiff in conjunction with a construction project to improve a residential subdivision property known as Alta Vista Meadows in the City of Sacramento. The first title insurance policy was issued to plaintiff in 2004 and insured a deed of trust recorded November 1, 2004, and secured a loan in the amount of $2,995,500 by plaintiff to GSJ Company, LLC ("GSJ") for the acquisition and development of the Property (the "2004 Loan"). (Request for Judicial Notice, Ex.1 ("Compl.") ¶¶ 8, 10.) The second title insurance policy was issued to plaintiff in 2005 and insured a deed of trust recorded on November 2, 2005, and secured a loan in the amount of $5,499,500 by plaintiff to GSJ for construction on the Property (the "2005 Loan"). (Id. ¶¶ 11, 13.)

Both title insurance policies (the "Policies") contained identical provisions that insured plaintiff against any loss or damage by reason of the:

> 7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
> (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
> (b) arising from an Improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the Indebtedness secured by the Insured mortgage which at Date of Policy the Insured as advanced or is obligated to advance;

(Piraino Aff. Ex. 2.) The Policies' coverage was subject to conditions and stipulations, including exclusion based on paragraph 8(c), which stated that "[t]he Company shall not be liable for loss or damage to any insured for liability

2

voluntarily assumed by the insured in settling any claim or suit <u>without the prior written consent of the Company</u>." (Id.) (emphasis added).

On November 22, 2006, A. Teichert & Son, Inc. ("Teichert") filed an action in Sacramento Superior Court against GSJ (the owner of the property), International Fidelity Insurance Company (a bonding company) ("IFIC"), and plaintiff to recover $878,156.23 for labor and materials that Teichert allegedly supplied to the property. (Request for Judicial Notice, Ex. 7.) Plaintiff was named as a defendant in the third cause of action for foreclosure of mechanic's lien and the sixth cause of action for enforcement of bonded stop notice. (Id.) IFIC filed a first amended cross-complaint in the Teichert Action on June 6, 2007, which included claims against plaintiff related to a set aside agreement. (Request for Judicial Notice, Ex. 8.)

Plaintiff did not provide defendant notice of the Teichert action when it was initially filed or request that defendant defend or indemnify it against the foreclosure of the mechanic's lien. On February 13, 2007, plaintiff's in-house counsel filed an answer to Teichert's complaint. (Umpqua's Request for Judicial Notice ¶ 1, Ex. 1.) Plaintiff later hired private counsel Peter Isola at Davis Wright Tremaine, LLP to represent it in the Teichert action. (Lowenthal Aff. ¶ 29, Ex. 15.)

On January 23, 2008, Mr. Isola contacted Alan Brickley, defendant's in-house counsel, and inquired about making a claim regarding its title insurance policy for the Alta Vista Property. (Isola Aff. ¶ 5, Ex. A.)  Mr. Brickley advised Mr. Isola to

3

submit plaintiff's claim directly to defendant's claims department. (Id.) That same day, Mr. Isola received an e-mail communication from Robert Hull, Vice President and Senior National Claims counsel for defendant, advising him to send plaintiff's claim directly to defendant's claims department. (Id. ¶ 6, Ex. B.)

On January 24, 2008, Teichert filed a motion for summary adjudication on two causes of action, but did not seek relief with respect to its third cause of action for foreclosure of mechanic's lien against plaintiff. (Lowenthal Aff. ¶ 16(e), Ex. 9.) Plaintiff sent a letter to defendant on January 30, 2008, requesting defense and indemnity in the Teichert action (the "Claim"). (Id. ¶ 29(c), Ex. 15.) The letter included all applicable pleadings made by Teichert against plaintiff and the cross-complaint filed by IFIC. (Id.; Isola Aff. ¶ 7.)

On January 31, 2008, Mr. Isola contacted a First American employee who identified herself as the assistant to Christine Woods (another First American employee in the claims department) to confirm that defendant had received plaintiff's tender and that it had been properly routed to a claims handler. (Isola Aff. ¶ 7.) On February 5, 2008, Mr. Isola e-mailed Mr. Hull advising him that defendant had confirmed receipt of plaintiff's tender letter, but had not yet responded to the claim. (Id. ¶ 8, Ex. C.) Mr. Isola also advised Mr. Hull that plaintiff had the opportunity to possibly settle the litigation, and asked that Mr. Hull direct the claims handler to contact Mr. Isola immediately. (Id.) Defendant acknowledged receipt of the Claim by letter dated February 7, 2008, and advised plaintiff

4

1  that the Claim had been forwarded to its associate counsel,
2  Catherine Piraino, for investigation.  (Piraino Aff. ¶ 7, Ex. 4.)
3          On February 7, 2008, Mr. Isola telephoned Ms. Piraino
4  and left her a voicemail message inquiring about the status of
5  plaintiff's tender and advising her that plaintiff was actively
6  engaged in settlement discussions regarding the mechanic's lien.
7  (Isola Aff. ¶ 10.)  On February 8, 2008, Mr. Isola e-mailed Ms.
8  Piraino confirming that he had left her a voicemail the previous
9  day and advising her that there was a pending sale of the
10 Property that was expected to close on February 13, 2008,
11 pursuant to a possible settlement agreement and inviting her to
12 call to discuss these issues.  (Id. ¶ 11, Ex. E.)
13         Between February 5, 2008, and February 11, 2008, Mr.
14 Isola actively negotiated with Teichert on behalf of plaintiff
15 for the release of the liens on the Property.  (Id. ¶ 20.)  On
16 February 11, 2008, Teichert offered to release its lien claim and
17 dismiss the lawsuit for payment of $1,125,000.  (Id.)  On
18 February 13, 2008, plaintiff executed a written settlement
19 agreement in the Teichert action.  (Lowenthal Aff. ¶ 16(d), Ex.
20 8.)  The settlement agreement provided, among other things, that
21 the Property would be sold and $1,125,000 of the net proceeds
22 would be distributed to Teichert in exchange for a release by
23 Teichert of all of its claims, including those against GSJ and
24 IGIC.  (Id.)  Escrow on the Property closed on February 13, 2008,
25 and the net proceeds were distributed in accordance with the
26 terms of the settlement agreement.  (Id. ¶ 9, Ex. 2.)  Teichert
27 released the mechanic's lien on February 19, 2008, and dismissed
28 the Teichert Action on March 19, 2008.  (Request for Judicial

5

1  Admission Ex. 10.)
2          Plaintiff did not receive defendant's prior written
3  consent before it executed the settlement agreement, (Piraino
4  Aff. ¶ 16), nor did it forward a copy of the settlement agreement
5  to defendant for its review, (Lowenthal Aff. ¶ 29(f), Ex. 15).
6  On June 19, 2008, plaintiff sent a proof of loss to defendant.
7  (Id. ¶ 9, Ex. 2.)
8          On February 19, 2008, Ms. Piraino e-mailed Mr. Isola
9  confirming her receipt of Mr. Isola's voicemail and asking him to
10 contact her to discuss the claim. (Isola Aff. ¶ 14, Ex. G.) The
11 next day, Mr. Isola telephoned Ms. Piraino to discuss plaintiff's
12 claim and advise her that the sale of the property had already
13 taken place. (Id. ¶ 15.) Ms. Piraino informed Mr. Isola that
14 defendant had ceased its investigation due to the sale of the
15 property and settlement of the litigation, and considered
16 plaintiff's title claims moot. (Id.) Plaintiff did not receive
17 any further communications from Ms. Piraino advising that
18 plaintiff's claim had been closed, resolved, or otherwise denied.
19 (Id. ¶ 16.) Ms. Piraino states that she did not conduct a
20 substantive analysis of plaintiff's claims at any time. (Martin
21 Aff. ¶ 2, Ex. 1.)
22         Upon receipt of plaintiff's Proof of Loss, Ms. Piraino
23 retained Jeffrey Lownethal of Steyer Lownethal Boodrookas Alvarez
24 & Smith LLP to conduct a factual investigation, analyze the
25 claim, and provide defendant with a legal opinion regarding
26 coverage. (Piraino Aff. ¶¶ 11-12.) In August 2008, Mr.
27 Lowenthal contacted plaintiff's counsel to notify plaintiff of
28 his role in the investigation and request documents that would

6

enable him to analyze the claim. (Lowenthal Aff. ¶ 14.) Mr. Lowenthal's investigation lasted nine months and found that defendant had no obligation to indemnify plaintiff for any of the alleged losses. (Id. ¶¶ 4-41, 43.) Defendant authorized Mr. Lowenthal to issue a denial of coverage letter, dated May 26, 2009, which cited four independent and overlapping bases for defendant's denial of coverage. (Id. ¶ 43.) The second basis, and grounds for this motion for summary judgment, was that plaintiff's claim was excluded from coverage by paragraph 8(c) of the Policies' Conditions and Stipulations, which excludes settlement claims made without defendant's prior written consent. (Id.)

On November 17, 2009, plaintiff filed this action, which asserts claims for Declaratory Relief, Breach of Insurance Contract, and Bad Faith Breach of Insurance Contract.

II. Evidentiary Objections

   A. Defendant's Objections

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted). Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on

a motion for summary judgment so long as the moving party's objections could be cured at trial.  See <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

Defendant has raised thirty-five objections (Docket No. 68-2), objecting to portions of five affidavits submitted by plaintiff on grounds of lack of relevance, foundation, improper expert opinion testimony, violation of parol evidence rule, hearsay, and speculation.

Objections to evidence on the ground that the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself.  See <u>Burch</u>, 433 F. Supp. 2d at 1119-20.  A court can award summary judgment only when there is no genuine dispute of <u>material</u> fact.  It cannot rely on irrelevant facts, and thus relevance objections are redundant. Instead of objecting, parties should argue that certain facts are not material.  Similarly, statements based on speculation, improper legal conclusions, personal knowledge, or argumentative statements are not <u>facts</u> and can only be considered as arguments, not as facts, on a motion for summary judgment.  Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency.  Objections on any of these grounds are superfluous, and the court will overrule them.

In the interest of brevity, as the defendant is aware of the substance of its objections and the grounds asserted in support of each objection, the court will not review the substance or grounds of the individual objections here. Defendant's objections are all overruled, as they are either

8

duplicative of the summary judgment standard or could be presented in a form that would be admissible at trial.[1]

B. <u>Plaintiff's Objection</u>

Plaintiff has raised one objection (Docket No. 66), taking issue with portions of a declaration and exhibit submitted by defendant on the ground that it constitutes privileged attorney-client communications.

In a diversity action such as this one, the attorney-client privilege is governed by state law. Fed. R. Evid. 501. Under California law, the attorney-client privilege confers a privilege on the client to "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." Cal. Evid. Code § 954. "The party claiming the privilege has the burden of establishing the preliminary facts necessary to supports its exercise . . . ." <u>Costco Wholesale Corp. v. Superior Court</u>, 47 Cal. 4th 725, 733 (2009).

Plaintiff objects to defendant's possession and use of an e-mail chain dated May 10, 2007, between two of plaintiff's senior employees, Christeen Mazza and Lori Reeves, and

---

[1] Objection 30 relates to statements made by Cynthia Bayles in her declaration supporting plaintiff's opposition to summary judgment. Defendant objects to Ms. Bayles' statement that plaintiff settled in February 2009 because plaintiff "likely would have been unable to find another buyer for the Alta Vista Property at that time and/or at that sales prices." (Bayles Decl. ¶13.) Defendant argues that this statement contradicts Ms. Bayles' prior deposition testimony that plaintiff settled because it was "fatigued" with the litigation and should therefore be excluded. (Lowenthal Aff. Ex. 13 at 122:19-21.) However, Ms. Bayles' declaration is a consistent elaboration of her prior deposition testimony that "the opportunity to get the property sold was there . . . there was a potential that we would lose that sale and it would go on for who knows how long." (<u>Id.</u> at 123:1-7.)

plaintiff's staff attorney, Michael Coker.  Plaintiff claims that it mistakenly produced the email chain to defendant during document production in 2008.  A portion of the email chain is quoted in Mr. Lowenthal's letter dated May 26, 2009, in which he presented defendant's decision to deny plaintiff's claim. Plaintiff attached a copy of this letter as an exhibit to their Complaint in this action.  (Compl. Ex. 3.)  Plaintiff first objected to defendant's possession of the email chain during defendant's deposition of Mr. Coker on June 27, 2011. Defendant's counsel at that time concurred that the e-mail was protected and agreed to work with plaintiff's counsel to "return all the documents that are protected."  (Martin Aff. Ex. 1 at 29:14-16.)  Defendant did not return the document and plaintiff presents no evidence that it pursued the matter further.

     Production of privileged materials does not automatically constitute a waiver of attorney-client privilege. See Rico v. Mitsubishi Motors Corp., 42 Cal. 4th 807, 818 (2007). Under the California Evidence Code, attorney-client privilege may be waived by a failure to assert the privilege or by conduct inconsistent with claiming the protection.  See Cal. Evid. Code § 912(a); Regents of Univ. of Cal. v. Superior Court, 165 Cal. App. 4th 672, 679 (4th Dist. 2008).  Plaintiff was on notice that the emails had been produced to defendant when it received Lowenthal's letter in 2009; instead of objecting at that time, plaintiff proceeded to attach the letter to its Complaint in this matter.  Plaintiff did notify defendant that the e-mails were privileged during Mr. Coker's deposition in June 2011, but presents no evidence that it followed up with defendant's prior

counsel to obtain the document.  These actions suggest a failure to take reasonable steps to protect the communications as privileged.

Even if the court were to find that the document is privileged, the "mantle of confidentiality" has been "irretrievably breached."  Id. at 681-82.  Mr. Lowenthal relied on the documents during his investigation of plaintiff's claim and based his conclusions, in part, on the document.  As plaintiff's claim for bad faith breach of insurance contract challenges the basis for Mr. Lowenthal's conclusions, this evidence is inextricably tied to defendant's case.  The court finds no compelling need to place the exhibit under seal, as there is no evidence that the document contains any sensitive communications relating to attorney work product or conclusions.  Accordingly, the court overrules plaintiff's objection.

III. Discussion

A.   Motion for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.

1  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
2  Alternatively, the moving party can demonstrate that the
3  non-moving party cannot produce evidence to support an essential
4  element upon which it will bear the burden of proof at trial.
5  Id.
6           Once the moving party meets its initial burden, the
7  burden shifts to the non-moving party to "designate 'specific
8  facts showing that there is a genuine issue for trial.'"  Id. at
9  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,
10 the non-moving party must "do more than simply show that there is
11 some metaphysical doubt as to the material facts."  Matsushita
12 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
13 "The mere existence of a scintilla of evidence . . . will be
14 insufficient; there must be evidence on which the jury could
15 reasonably find for the [non-moving party]."  Anderson, 477 U.S.
16 at 252.
17          In deciding a summary judgment motion, the court must
18 view the evidence in the light most favorable to the non-moving
19 party and draw all justifiable inferences in its favor.  Id. at
20 255.  "Credibility determinations, the weighing of the evidence,
21 and the drawing of legitimate inferences from the facts are jury
22 functions, not those of a judge . . . ruling on a motion for
23 summary judgment . . . ."  Id.
24          Defendant asks the court to take judicial notice of
25 publically-recorded documents relating to plaintiff's deed and
26 Teichert's Mechanic Liens and lawsuit.  The court may take
27 judicial notice of facts "not subject to reasonable dispute"
28 because they are either "(1) generally known within the

12

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201, which includes "matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The court will take judicial notice of these documents, as they are matters of public record whose accuracy cannot be questioned.

The parties have also requested that the court take judicial notice of documents filed in state court in the suit filed by Teichert. To the extent that the parties request that the court take judicial notice that the documents were filed in state court, the request is granted. See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998). However, the court will not take judicial notice of any disputed facts contained in those documents. See Lee, 250 F.3d at 690.

Defendant also asks the court to take judicial notice of plaintiff's Complaint and defendant's Answer to Complaint in the present case. The court does not need to judicially notice these pleadings to consider them.

### i. Breach of Insurance Contract

The elements of a cause of action for breach of contract are (1) the existence of the contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages. First Commercial Mortg. Co. v. Reece, 89 Cal. App. 4th 731, 745 (2d Dist. 2001). Plaintiff alleges that defendant breached the Policies by denying plaintiff's demand for indemnification in its settlement with Teichert.

13

1              "[T]he terms of a title insurance policy are subject to
2    the same rules of construction applicable to insurance policies
3    in general, and any provisions limiting liability or excluding
4    matters from coverage will be strictly construed against the
5    insurer and in favor of the insured." Brown v. St. Paul Title
6    Ins. Corp., 634 F.2d 1103, 1107 (8th Cir. 1980) (citations
7    omitted).  Plaintiff relies on "the general principle that doubts
8    as to the meaning must be resolved against the insurer and that
9    any exception to the performance of the basic underlying
10   obligation must be stated as clearly to apprise the insured of
11   its effect." Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 269
12   (1966).  The court acknowledges this rule, but observes that it
13   "must be applied in conjunction with the rules applicable to the
14   interpretation of contracts." Gribaldo, Jacobs, Jones & Assoc.
15   v. Agrippina Versicherunges A.G., 3 Cal. 3d 434, 442 (1970).  The
16   case at issue concerns interpretation of the no-voluntary-
17   payments provision in the Policies.
18              Defendant concedes for the purposes of this motion that
19   plaintiff's title insurance policy covered the Teichert mechanics
20   lien.  However, defendant alleges that plaintiff breached
21   paragraph 8(c) of the Policies providing that "[defendant] shall
22   not be liable for loss or damage to any insured for liability
23   voluntarily assumed by the insured in settling any claim without
24   prior written consent of [defendant]."  (Piraino Aff. Ex. 2)
25   (emphasis added).  Paragraph 8(c) is a type of no-voluntary-
26   payments ("NVP") provision, which is commonly found in title
27   insurance policies that contain defense obligations.
28              "California law enforces . . . no voluntary payments

14

provisions in the absence of economic necessity, insurer breach, or other extraordinary circumstances." Jamestown Builders, Inc. v. Gen. Star Indemnity Co., 77 Cal. App. 4th 341, 346 (4th Dist. 1999). "The no-voluntary-payment provision is based on the equitable rule that 'the insurer [is invested] with the complete control and direction of the defense,' and is thus not liable for any voluntary payments, expenses, or other obligations assumed by the insured without the insurer's consent." Truck Ins. Exch. v. Uniguard Ins. Co., 79 Cal. App. 4th 966, 981 (2d Dist. 2000) (quoting Gribaldo, 3 Cal. 3d at 449). The NVP provision protects insurers against collusion between the settling parties and "protects against coverage by fait accompli." Jamestown, 77 Cal. App. 4th at 346.

It is undisputed that plaintiff executed the settlement without defendant's prior written consent. However, plaintiff argues that its settlement payment falls into an exception to the provision because the payment was not voluntary and plaintiff was constructively abandoned by defendant after it tendered its claim.[2]

"[A]n insured may be able to avoid application of the NVP provision where the payments were made involuntarily because

---

[2] Defendant argues that the Complaint insufficiently pleads an exception to the NVP provision based on involuntary payment, precluding plaintiff's later reliance on such exceptions. Defendant provides no authority that a heightened pleading requirement applies to contract disputes involving a NVP provision. Defendant's reliance on Jamestown is misplaced. Although the court in Jamestown noted that "[d]espite having three opportunities to do so, Jamestown failed to plead that the $1,240,000 paid to the homeowners was involuntarily made," Jamestown, 77 Cal. App. 4th at 348, there is no evidence that Jamestown ever attempted to raise the defense at the summary judgment stage.

15

of circumstances beyond its control." Id. at 348.  Generally, voluntariness is a question of fact.  See Fiorito v. Superior Court, 226 Cal. App. 3d 433, 440 (4th Dist. 1990).  However, the question of voluntariness can be determined as a matter of law on undisputed facts.  Tradewinds Escrow, Inc. v. Truck Ins. Exch., 97 Cal. App. 4th 704, 710 (2d Dist. 2002).  Plaintiff argues that its settlement payment was not voluntary for two reasons and therefore falls under this exception to the NVP provision.

First, Plaintiff argues that the settlement payment was not voluntary because they had no valid defenses against the Teichert action.[3]  (Opp. to Mot. for Summ. J. at 15:24-27.) Plaintiff alleges that this means that defendant would have been required to pay the settlement amount regardless of whether plaintiff had written consent prior to entering the settlement agreement.  In other words, plaintiff's contention is that defendant suffered no harm from plaintiff's settlement and therefore the NVP provision should not apply in this instance.

"[U]nlike a notice provision or a cooperation clause, [an NVP] provision can be enforced without a showing of prejudice: '[T]he existence or absence of prejudice to [the insurer] is simply irrelevant to [its] duty to indemnify costs incurred before notice.'" Jamestown, 77 Cal. App. 4th at 350. The Ninth Circuit has expressly recognized that prejudice is not

---

[3] Plaintiff alleges that it warned defendant that its deed of trust may have lost priority at inception because construction may have already begun on the property.  (Reeves Aff. ¶¶ 5-7.)  Because construction did in fact begin on the Property prior to the recording of plaintiff's deed, plaintiff alleges that it had no defense against Teichert's claim.  (Opp. to Mot. for Summ. J. at 17:7-14.)

16

required to enforce NVP provisions in California.  See Faust v. Travelers, 55 F.3d 471, 472 (9th Cir. 1995) ("[Insured] does not cite any California authority, and this court is aware of none, that imposes a prejudice requirement for enforcement of the [NVP] provision.").

The case of Low v. Golden Eagle Insurance Co., 110 Cal. App. 4th 1532 (1st Dist. 2003), presents similar circumstances as the case at hand.  In Low, Golden Eagle issued a commercial general liability policy containing an NVP provision to the insured.  Id. at 1534.  The insured was served with a complaint for construction defects but did not tender the defense to Golden Eagle for two years.  Id. at 1535.  Four months after its tender, but before Golden Eagle issued its coverage determination (which occurred 20 months after tender), the insured negotiated a settlement of the construction-defect claims without first obtaining Golden Eagle's consent.  Id. at 1537.  Golden Eagle rejected the insured's subsequent request for reimbursement of the settlement payment citing the policy's NVP provision.  Id. at 1540.  The Low court held that the insured clearly breached the NVP provisions and that NVP provisions were enforceable both before and after the insured tenders its claim.  Id. at 1546.

Plaintiff challenges the applicability of the Low decision to this case because Low did not concern title insurance.  Plaintiff cites a number of out-of-state cases that held that NVP provisions contained in titled insurance policies were unenforceable because the underlying claim was valid.  See, e.g., Holinda v. Title & Trust Co., 438 So. 2d 56, 57-58 (Fla. Dist. Ct. App. 1983); Sec. Title & Guar. Co. v. MGIC Mortg.

17

...

Corp., 160 Ga. App. 421, 422-23 (1981). The holdings in these cases rely on the absence of prejudice to the lender and are therefore not applicable in California where a showing of prejudice is not required to enforce NVP provisions. Plaintiff presents no precedent showing that the NVP prejudice requirement differs for title insurance, and this court is unable to find any support for the proposition.

Second, Plaintiff alleges that the settlement payment was not voluntary because it was "facing economic necessity and exigent circumstances concerning the sale of the Alta Vista Property." (Opp. to Mot. for Summ. J. at 23:5-6.) The exigent-circumstances exception applies where there are "circumstances beyond [the insured's] control." Jamestown, 77 Cal. App. 4th at 348. This is a difficult standard to meet and requires a showing that immediate action is required to protect the insured's legal interests. See id. (suggesting that pre-tender defense costs necessary to avoid a default fell within the exception).

The exigent circumstances alleged by plaintiff concern its business decision to settle its claims with Teichert immediately based on the current availability of a buyer for the Property. Plaintiff did not need to settle immediately based on a threat to its legal interests, such as the potential default judgment, but because it was concerned that Teichert would withdraw its settlement demand and plaintiff might be forced to further litigate the claims. Nor was settlement plaintiff's only option, as its Senior Vice President and Special Assets Officer, Cynthia Bayles, explained that she was working on "evaluating several workout options" for the loans. (Bayles Decl. ¶ 6.)

Plaintiff's justifications for proceeding with the settlement in the absence of defendant's written consent are based on business decisions designed to protect defendant's financial interests. Plaintiff fails to present material facts to support its claim that its settlement with Teichert was involuntary and thus subject to an exception to the NVP provision.

Plaintiff alternatively claims that its settlement payment falls into the abandonment exception to the NVP provision due to defendant's lack of communication with plaintiff immediately following tender. Plaintiff attempted to communicate with defendant four times during the two weeks after it tendered, and before it settled, the Teichert claim. Although defendant did not promptly respond to pre-settlement communications, this does not establish that defendant abandoned its right to defend the claim or approve settlement payments.

"[I]t is only when the insured has requested and been denied by the insurer that the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent, and under the compulsion of that refusal undertake his own defense at the insurer's expense." Gribaldo, 3 Cal. 3d at 449. Defendant did not communicate a denial of plaintiff's claim before plaintiff entered into settlement. Defendant's final communication prior to plaintiff entering into settlement acknowledged the claim and confirmed that it had been assigned to counsel for further investigation. (Piraino Aff. ¶ 7, Ex. 4.)

Plaintiff argues that defendant's failure to respond to pre-settlement correspondence constitutes a breach of industry

19

standards of practice and constructive denial of coverage.  This court is aware of no precedent establishing that insurers abandon their claims if they do not respond within two weeks of tender.[4]

Plaintiff's settlement of claims without defendant's prior written consent clearly constitutes a violation of the NVP provision in plaintiff's title insurance.  There is no genuine dispute of material facts that would allow plaintiff to establish that its settlement claims fall under an exception to the NVP provision.  Accordingly, the court will grant defendant's motion for summary judgment.

### ii. Bad Faith Breach of Insurance Contract and Request for Punitive Damages

Plaintiff's first and third claims for Declaratory Relief and Bad Faith Breach of Insurance Contract are dependant upon the existence of a threshold breach of the Policies. Therefore, defendant's request for partial summary judgment is rendered moot.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED.

DATED: October 12, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff's constructive abandonment argument is further weakened by the fact that plaintiff never forwarded defendant a copy of the proposed settlement agreement or informed defendant of the proposed settlement terms.  (Lowenthal Aff. ¶ 29(f), Ex. 15.)

20